IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS E. CAMPBELL,                )
                                    )
                                    )
         Plaintiff,                 )
                                    )
     v.                             )  Civil Action No. 06-871
                                    )
STATE FARM MUTUAL AUTOMOBILE        )
INSURANCE COMPANY,                  )
                                    )
         Defendant.                 )

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                              April 4, 2008

This is an action for declaratory judgment, breach of contract and bad faith. Plaintiff, Thomas E. Campbell, was a passenger in an automobile and was injured in a single car accident. Plaintiff alleges that the driver, Robin E. Heathcock, was an insured of defendant, State Farm Mutual Automobile Insurance Company at the time of the accident. Defendant denies that Mr. Heathcock was its insured at the time of the accident and contends that its refusal to provide Mr. Heathcock with either coverage or a defense was appropriate.

Plaintiff obtained a state court judgment against Mr. Heathcock. Thereafter, Mr. Heathcock assigned his rights against defendant to plaintiff. Plaintiff contends that the state court judgment he obtained against Mr. Heathcock should be paid by defendant and that defendant acted in bad faith.

Defendant has filed a motion for partial summary judgment. Defendant contends that plaintiff's statutory claim for bad faith, Count III, is time-barred. Defendant further argues that plaintiff has failed to adduce any evidence to support his claim for common law bad faith breach of contract. Defendant also argues that plaintiff's claim for judgment in excess of the policy limits should be dismissed. For the reasons set forth below, the motion will be granted in part and denied in part.

I.   BACKGROUND

Unless otherwise indicated, the facts set forth below are undisputed.

On June 1, 2002, plaintiff was a passenger in a 1993 Dodge Dakota truck driven by Robin Heathcock. Mr. Heathcock lost control of the vehicle and plaintiff sustained various injuries. Mr. Heathcock and his wife, Lisa Heathcock, had an automobile insurance policy, No. 9092-615, issued by defendant insuring the Dodge Dakota truck and a 1997 Ford Escort. The policy limits were $50,000. The policy was administered by the Rosemary Skaggs Agency ("Skaggs Agency"). The insurance contract provides:

> Cancellation
>
> How you may cancel. You may cancel your policy by notifying us in writing of the date to cancel, which must be later than the date you mail or deliver it to us. We may waive these

requirements by confirming the date and time of
                    cancellation to you in writing.
Insurance Policy, Exhibit C to First Amended Complaint, [Doc. No. 25] at page 32.

The insurance contract further provides:

1.   Policy Changes

    \*\*\*
    d.   Joint and Individual Interests. When there are two or more named insureds, each acts for all to cancel or change the policy.

On May 26, 2002, State Farm mailed a "Notice of Cancellation" to Mr. and Mrs. Heathcock. The Notice of Cancellation advised Mr. and Mrs. Heathcock that, unless a payment of $118.23 was made, the policy would cancel at 12:01 a.m. on June 17, 2002.

On May 31, 2002, Mrs. Heathcock went to the Skaggs Agency. At that time, Mr. and Mrs. Heathcock had separated. Mrs. Heathcock no longer wished to be financially responsible for insuring the Dodge Dakota. There is a dispute as to what transpired at the Skaggs Agency. Defendant contends that Mrs. Heathcock insisted, against the advice of the agents at the Skaggs Agency, that the policy be cancelled as to the Dodge Dakota. Plaintiff denies that Mrs. Heathcock intended to cancel the policy. Rather, plaintiff contends that Mrs. Heathcock believed, on the basis of the cancellation notice, that the policy on both vehicles was paid through June 16, 2002 and,

3

therefore, would not expire until then. During this visit, Mrs. Heathcock gave a partial premium payment of $47.00. Plaintiff contends that Mrs. Heathcock intended the partial payment to extend her insurance coverage on her Ford Escort. There is a dispute as to whether defendant credited this payment to both vehicles, or just to the Ford Escort.

On June 1, 2002, Mr. Heathcock was involved in a single car accident which injured plaintiff. Defendant was notified of the accident by letter dated June 12, 2002. Thereafter, defendant's claim representative, Terry Calloway, performed an initial investigation of the claim. On June 17, 2002, Ms. Calloway interviewed Mrs. Heathcock by telephone. This interview was recorded. Mrs. Heathcock stated that she did not intend to cancel the insurance coverage on the Dodge Dakota immediately. Rather, Mrs. Heathcock thought that the insurance policy was paid and effective, for both vehicles, until June 16, 2002. Ms. Calloway also interviewed Mary Jo Tarr, an agent in the Rosemary Skaggs Agency. Ms. Tarr stated that Mrs. Heathcock insisted on cancelling the insurance coverage on the Dodge Dakota, effective immediately on May 31, 2002. Ms. Tarr stated that Mrs. Heathcock demanded that the coverage be cancelled despite Ms. Tarr's warning that the Dodge Dakota would then be uninsured.

On the basis of her investigation, Ms. Calloway recommended to her supervisor, Thomas Maher, that the claim be

4

denied on the basis that the policy had been cancelled prior to the accident. Mr. Maher reviewed Ms. Calloway's recommendation, and the statements from Mrs. Heathcock and Ms. Tarr. Mr. Maher then asked defendant's underwriting department for written confirmation that the policy had been cancelled. Melissa Collins, Senior Underwriting Team Leader, sent a memorandum which identified final date of coverage as May 31, 2002. Mr. Maher also interviewed Ms. Tarr. Mr. Maher did not interview Ms. Heathcock.

Defendant concedes that, but for Mrs. Heathcock's May 31, 2002 visit to the Rosemary Skaggs Agency, the insurance policy would have covered both vehicles until June 16, 2002. See Maher Deposition, [Doc. No. 48, Exhibit E] at page 41. There is some dispute, however, as to whether Mrs. Heathcock received a refund for the coverage on the Dodge Dakota from May 31, 2002 to June 16, 2002. There is also some dispute as to whether the $47 Mrs. Heathcock paid on May 31, 2002 was allocated to both vehicles. There is no dispute, however, that on August 9, 2002, defendant advised Mr. Heathcock that it was denying coverage of the accident due to Mrs. Heathcock's cancellation of the policy.

On January 27, 2004, plaintiff instituted a civil action in the Court of Common Pleas of Westmoreland County, Pennsylvania, against Mr. Heathcock, seeking money damages for his injuries. On February 25, 2005, default judgment was entered

5

for plaintiff and against Mr. Heathcock. On August 10, 2005, a non-jury trial on the issue of damages was held before the Court of Common Pleas of Westmoreland County. Plaintiff was awarded $137,569.74. The court entered judgment in the amount of $144,553.20 on November 15, 2005. On April 17, 2006, Mr. Heathcock assigned his claims against defendant to plaintiff. Plaintiff filed this action in the Court of Common Pleas of Allegheny County on June 1, 2006. Defendant timely removed to this court.

In Count I, plaintiff seeks a declaration that the insurance policy was in full force and effect on the date of the accident and seeks an order that defendant is required to pay the default judgment in full, plus post-judgment interest. In Count II, plaintiff alleges defendant breached the insurance contract by acting in bad faith. In Count III, plaintiff seeks damages for defendant's alleged violations of the Pennsylvania Bad Faith Statute, 42 Pa.Cons.Stat. § 8371.

II. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

If, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Liberty Lobby, 477 U.S. at 247-48.

Here, subject matter jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Accordingly, Pennsylvania law applies. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.3d 1428, 1431, n. 3 (3d Cir. 1991). In Pennsylvania, an insurance contract is governed by the law of the state in which the contract was made. Crawford v. Manhattan Life Ins. Co., 280 Pa.Super. 150 (1966). There is no dispute that the contract was made in Pennsylvania. Thus, Pennsylvania law governs this matter.

It is on this standard that the court has reviewed the defendant's motion for partial summary judgment and plaintiff's response thereto. Based on the pleadings and evidence of record,

and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that plaintiff's claim for bad faith is time-barred. Accordingly, the court will grant defendant's motion for summary judgment of Count III. There are, however, genuine issues of material fact as to whether plaintiff can establish bad faith breach of contract as set forth in Count II of the amended complaint. Further, for the reasons set forth below, the court will deny defendant's motion to limit plaintiff's damages to the policy limits.

III. DISCUSSION

A. Bad Faith in Violation of 42 Pa.Cons.Stat. § 8371

Defendant argues that plaintiff's claim in Count III for bad faith in violation of the Pennsylvania Bad Faith Statute, 42 Pa.Cons.Stat. § 8371, is untimely. Recently, in Ash v. Continental Ins. Co., 593 Pa. 523 (Pa. 2007), the Pennsylvania Supreme Court held that claims brought pursuant to the Pennsylvania Bad Faith Statute are subject to the two-year statute of limitations for tort actions set forth at 42 Pa.Cons.Stat. § 5524. Id. at 536. The Pennsylvania Supreme Court did not, however, specify when the cause of action accrues.

In Sikirica v. Nationwide Ins. Co., the Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would hold that a two-year statute of limitations

8

applies to a claim for bad faith under 42 Pa.Cons.Stat. § 8371. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 223-24 (3d Cir. 2005). The court of appeals further predicted that the Pennsylvania Supreme Court would find that a statute of limitations begins to run when a cause of action arises or accrues which, in a bad faith claim, is when coverage is denied. Id. at 224-25 (citing Adamski v. Allstate Ins. Co., 738 A.2d 1033 (Pa. Super. 1999)). Here, there is no dispute that defendant denied Mr. Heathcock coverage by letter dated August 9, 2002.

Further, it is well established that, upon assignment of a claim, the assignee obtains no greater rights than the insured. Adamski, 738 A.2d at 1039. Plaintiff claims that the "no action clause" in the insurance policy precluded this action unless and until a final judgment was rendered against Mr. Heathcock. Specifically, plaintiff argues that, by the terms of the policy, no action could be instituted against defendant until "the amount of damages an insured is legally liable to pay has been finally determined by: (1) judgment after actual trial... ." Thus, plaintiff argues, his bad faith claim did not accrue until he obtained default judgment against Mr. Heathcock.

As noted above, however, plaintiff is Mr. Heathcock's assignee. In Appaluci v. Agora Syndicate, Inc., the Court of Appeals for the Third Circuit noted that the Pennsylvania Supreme Court has not addressed this issue. Appaluci v. Agora Syndicate,

Inc., 145 F.3d 630, 634 (3d Cir. 1998). The court of appeals predicted that the Pennsylvania Supreme Court would hold that "no action" clauses do not preclude suits by an insured against an insurer who has allegedly breached a contractual duty to defend. Id.

Therefore, Mr. Heathcock's claim for bad faith, which is now plaintiff's claim by virtue of the assignment, accrued on August 9, 2002. This suit was filed more than two (2) years later. Accordingly, plaintiff's claim for bad faith pursuant to 42 Pa.Cons.Stat. § 8371 is untimely and defendant's motion for summary judgment of Count III will be granted.

B. Common Law Bad Faith Breach of Contract

Defendant contends that plaintiff has failed to adduce any evidence to support his claim that defendant breached the insurance contract in bad faith. Plaintiff argues that the genuine issues of material fact as to whether Mrs. Heathcock intended to cancel coverage on the Dodge Dakota effective May 31, 2002, whether defendant canceled coverage in accordance with the contract, whether defendant allocated the premium to both vehicles, whether defendant failed to provide either Mr. or Mrs. Heathcock with a refund of premiums paid on the Dodge Dakota, and whether defendant conducted a sufficient investigation prior to denying coverage constitute sufficient evidence to deny defendant's motion for summary judgment. The court agrees.

At the outset, it is necessary to determine whether plaintiff is required to prove defendant's bad faith by clear and convincing, or a mere preponderance, of the evidence. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 129 (3d Cir. 2005)(holding that "[i]n deciding a motion for summary judgment, the court is required to take the heightened standard of proof into account"). Defendant argues that Pennsylvania courts have required common law bad faith claims to satisfy the heightened evidentiary standard applied to statutory bad faith claims. Plaintiff does not concede the argument, but contends that regardless of the standard, he has adduced sufficient evidence of defendant's bad faith to submit the question to a jury.

In Haugh v. Allstate Ins. Co., 322 F.3d 227 (3d Cir. 2003), the court of appeals analyzed a common law bad faith claim in light of the Pennsylvania Supreme Court's decision in Birth Center v. St. Paul Companies, Inc., 567 Pa. 386 (Pa. 2001). Although the court of appeals was not explicit on this point, it appears clear that the court of appeals concluded that a common law bad faith claim must be established pursuant to the same evidentiary standard applicable to a statutory bad faith claim, namely, whether the evidence was clear and convincing. Haugh, 322 F.3d at 237-38. See also McPeek v. Travelers Casualty and Surety Co., 2007 WL 1875801 (W.D. Pa. June 27, 2007)(holding that

11

common law bad faith must be proven by clear and convincing evidence); DeWalt v. Ohio Casualty Ins. Co., 513 F.Supp.2d 287 (E.D. Pa. 2007)(same).

The court of appeals further concluded that "Pennsylvania law makes clear that an insurer may be liable regardless of the limits of the policy for the entire amount of the judgment entered against the insured if it unreasonably refuses an offer of settlement." Haugh, 322 F.3d at 237. Thus, in order to prevail plaintiff must show, by clear and convincing evidence, that defendant acted unreasonably. See also McPeek, supra, (holding that plaintiff must show "that the insurer's conduct was unreasonable or negligent"); Dewalt, 513 F.Supp.2d at 297 (same). The court finds that there are a myriad of genuine issues of material fact on this issue and will, therefore, deny defendant's motion for summary judgment of Count II.

C. Plaintiff's Request for Damages

Defendant also seeks a ruling that plaintiff's damages are limited to the policy limits, specifically, $50,000. Defendant contends that had it not denied coverage in the first instance, plaintiff would have only been entitled to $50,000. Plaintiff argues that if successful on Count I, for declaratory judgment, and Count II, for breach of contract, he is entitled to recover in excess of the policy limits, specifically, the amount of the default judgment plus interest, and compensatory damages.

12

With respect to the plaintiff's claims for damages in Count II, in Birth Center v. St. Paul Companies, Inc., 567 Pa. 386 (Pa. 2001), the Pennsylvania Supreme Court distinguished causes of action brought pursuant to the Pennsylvania Bad Faith Statute, 42 Pa.Cons.Stat. § 8371, and causes of action for bad faith breach of contract. Damages for the former, the court held, were statutorily limited to punitive damages, interest, costs and attorneys' fees. Id. at 388. The court noted that these statutory remedies did not, however, displace the traditional damages for breach of contract. Rather, the court reasoned, the bad faith statute merely added remedies to those previously available at common law. Id.; see also Ash, 593 Pa. at 535-36.

Thus, "where an insurer acts in bad faith, by unreasonably refusing to settle a claim, it breaches its contractual duty to act in good faith and its fiduciary duty to its insured." Birth Center, 567 Pa. at 389. The Pennsylvania Supreme Court concluded, therefore, that "the insurer is liable for the known and/or foreseeable compensatory damages of its insured that reasonably flow from the insurer's bad faith conduct." Id.

Although Birth Center involved an insurance company's refusal to settle a claim within the policy limits, nothing in the opinion restricts the holding to that narrow set of facts.

13

Rather, Birth Center can only be fairly read for the proposition that the measure of damages in a common law bad faith breach of contract claim is compensatory damages without regard to the policy limits.

Further, with respect to damages in Count I, plaintiff seeks a declaration that the insurance policy was in effect at the time of the accident and enter an order that defendant pay $144,553.20, plus interest.[1] The federal Declaratory Judgment Act specifically provides that "further relief" is available based on a request for declaratory judgment. 28 U.S.C. § 2202. Section 2202 provides that "further necessary or proper relief based on a declaratory judgment or decree may be granted after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. The relief may take the form of money damages. See Alexander & Alexander, Inc. v. Van Impe, 787 F.2d 163, 166 (3d Cir. 1986). See also Ahlert Music Corp. v. Warner/Chappel Music Inc., 155 F.3d 17, 27 (2d Cir. 1998). Thus, if he is entitled to a declaration that the policy was in force at the time of the accident, plaintiff may also be entitled to money damages. There is no basis to conclude that these damages should be capped by

---

[1] Although neither party addresses it, defendant's underwriting section manager swore on July 12, 2006, under oath, that "[t]he policy was in effect on the loss date of June 1, 2002." See , Exhibit C to First Amended Complaint, [Doc. No. 25] at page 1.

14

the policy limits.

Accordingly, defendant's motion to limit plaintiff's damages to $50,000 will be denied.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment of Count III is GRANTED. Defendant's motion for summary judgment of Count II is DENIED. Defendant's motion for summary judgment to limit plaintiff's damages to the policy limits is DENIED.

BY THE COURT:

_____, J.

cc: All Counsel of Record